In the
**UNITED STATES DISTRICT COURT**
for the **SOUTHERN DISTRICT OF INDIANA**,
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **TERRY M. LI MARZI**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 1:09-cv-715-SEB-TAB |
| | ) |
| **MICHAEL J. ASTRUE**, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

**E N T R Y**

Defendant Commissioner of Social Security denied Plaintiff's application for disability benefits under the Social Security Act. Plaintiff brought this suit to obtain judicial review of that decision. For the reasons explained herein, the Commissioner's decision is affirmed.

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review follows the principle that Congress has designated the Commissioner,

not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of his legal conclusions is *de novo*. *Richardson*, *supra*.

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §§ 416(I) and 423(d)(1)(A). A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 USC § 423(d)(2)(B).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. § 404.1520. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id.* At the first step, if the applicant is currently engaged in substantial gainful activity, then he is not disabled. At the second step, if the

applicant's impairments are not severe, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, if the applicant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the applicant's impairments do not satisfy a Listing, then his residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the applicant has the RFC to perform his past relevant work, then he is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and his RFC, he will not be determined to be disabled if he can perform any other work in the relevant economy.

The burden rests on the applicant to establish steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations, the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. 20 C.F.R. §§ 404.1569 and 1569a. If an applicant has non-exertional limitations or exertional limitations that restrict the full

range of employment opportunities at his RFC level, then the grids may not be used and a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Id.*; *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may still be used as an advisory guideline in such cases. 20 C.F.R. § 404.1569.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the national Appeals Council to review the decision. If the Appeals Council either declines to review or affirms the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

Plaintiff applied for benefits in January 2006, alleging an onset-of-disability date in August 2005. Her application was denied on initial and reconsideration reviews. Her application was then denied by an ALJ following a hearing at which Plaintiff was represented by

---

[1] Initial and reconsideration reviews in Indiana are performed by an agency of the state government — the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration — under arrangement with the Social Security Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601 *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

counsel. The Appeals Council ultimately denied Plaintiff's request for review.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. At step two, he found that she had the severe impairments of bilateral degenerative joint disease of the knees, degenerative disc disease of the cervical spine, status post bilateral basilar joint arthroplasty, and obesity. The ALJ found that Plaintiff's other alleged impairments of asthma/chronic obstructive pulmonary disease, digestive system impairments (diverticulitis and gastroesophageal reflux disease), cardiac impairment, and depression did not exist at a severe level. At step three, the ALJ found that Plaintiff's impairments, singly and in combination did not meet or medically equal any of the Listing of Impairments. He evaluated her impairments under Listing 1.02 (major dysfunction of a joint), 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint), and 1.04 (disorders of the spine). For steps four and five, the ALJ determined that Plaintiff had the RFC to perform the full range of sedentary work. He made his decision at step four by finding that Plaintiff had the RFC to perform her past relevant work as a computer systems engineer as it is customarily performed in the national economy. Plaintiff asserts several errors with the ALJ's decision.

**Step-four finding.** Plaintiff argues that the ALJ selected the wrong classification for her past relevant job. She contends that the proper classification is performed at the "light" level of work, which is beyond the "sedentary" level to which the ALJ limited her and would mean that she is disabled. Plaintiff alleges that her previous job was denominated "computer systems administrator" and involved installing, managing, maintaining, and administering corporate

nation-wide computer backup systems. She claims that she sat about 66% of the time; she had to stoop and crawl; she had to handle, grab, or grasp big objects; and she sometimes carried quantities of computer tapes weighing more than 40 pounds. She contends that these exertional duties are beyond her capability now. She points to the fact that the state-agency reviewers concluded that she could not return to her past relevant work.

The ALJ found that Plaintiff's previous work was classified as "computer systems engineer" under the Dictionary of Occupational Titles ("DOT") classification of jobs, and is classified as a sedentary job. Plaintiff contends that this job title does not include the "crucial functions" in her actual job of kneeling and crawling to connect and disconnect wires from computers, carrying back-up tapes and computers, and walking or standing 35% of the time. She argues that a better fit for her job would be the DOT titles of "network control operator" or "data recovery planner," both of which are classified as being performed at the "light" RFC exertional level and, therefore, beyond the sedentary level to which the ALJ found she was limited.

At the fourth step, a claimant can be found able to perform her past relevant work "either as the claimant actually performed it or as generally performed in the national economy." 20 CFR § 404.1560(b)(2). *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Brewer v. Chater*, 103 F.3d 1384, 1393 (7th Cir. 1997); *Wolfe v. Shalala*, 997 F.2d 321, 323 (7th Cir. 1993); *Arbogast v. Bowen*, 860 F.2d 1400, 1405 n.6 (7th Cir. 1988). The ALJ classified Plaintiff's previous job as a "computer systems engineer," a sedentary-level job, and he found that she could return to her previous work as it is "customarily performed" in the national economy, (R. 23), not as she actually performed it. Plaintiff's argument ignores this aspect of the ALJ's rationale. Plaintiff's

argument that the ALJ's classification of her past job is erroneous is based solely on her assertion that the DOT's computer systems engineer title does not include certain exertional activities of her job as she actually performed it. But she fails to explain why the DOT's "computer systems engineer" job description does not adequately describe the substantive duties of her previous job, as customarily performed, except for the additional exertional requirements of kneeling, crawling, *etc*., and she fails to assert that the exertional demands of her actual job are integral parts of a computer systems engineer's job as defined in the DOT. Further, she fails to explain how the specific components of the DOT job descriptions for her two preferred job titles better describe the substantive duties of her past job. We will not undertake those inquiries and make those showings for her. The ALJ heard the testimony and reviewed the evidence and determined that Plaintiff's previous job, as customarily performed, was a computer systems engineer job and Plaintiff has not shown that the ALJ erred in this determination.

**Failure to discuss fibromyalgia/myofascial pain.** Plaintiff argues that the ALJ erroneously failed to discuss her fibromyalgia/myofascial pain that was diagnosed by Dr. Puzio, neurologist, and Dr. Biel, orthopedic surgeon. Neither doctor diagnosed Plaintiff with fibromyalgia. Plaintiff was examined by Dr. Biel in February 2007 and reported a two-to-three-month history of "rather severe" neck and bilateral shoulder pain and occipital headaches. After examining her and interpreting cervical and shoulder x-rays that he administered, Dr. Biel wrote that Plaintiff "has some symptoms suggestive of fibromyalgia." (R. 784). This is the most that he wrote on the matter. There is no record evidence cited by Plaintiff showing that Dr. Biel, or any other physician, tested her for fibromyalgia or made a diagnosis of it. Plaintiff does not cite any other occasion in the Record where another suggestion is made that she might have

fibromyalgia.

Twice, Dr. Puzio noted his impression that Plaintiff had "myofascial neck and back pain," (R. 787, 790), and once he noted that she had "[p]rimarily myofascial, neck and shoulder pain," (R. 850). "Myofascial" means:

> Pertaining to, or involving, the fasciae of muscles. Fascia (*pl*. fasciae) is a thin but tough membrane which surrounds the body under the skin; it also surrounds individual muscles. *Myofascial* refers specifically to those fasciae which cover muscles.

J. E. Schmidt, *Attorney's Dictionary of Medicine and Word Finder* at —338 (2009). Therefore, Dr. Puzio's notes describe the location or nature of Plaintiff's pain; they are not diagnoses of a disease condition or impairment.[2] The ALJ discussed Plaintiff's reports of pain in her neck, shoulders, and back, (R. 19-22), and did not err by not specifically noting Dr. Puzio's observation that her pain was, at least in part, in the myofascial areas of her neck, shoulders, and back.

**Improper pulmonary-function test and evaluation of pulmonary impairment.** At step two, the ALJ relied upon the normal or very good results of three pulmonary-function tests to find that Plaintiff's alleged asthma/chronic obstructive pulmonary disease impairments were not severe. (R. 16).[3] The ALJ noted that two of these tests occurred during a period of time, between August and December 2006, when Plaintiff's condition was allegedly quite severe.

---

[2] Dr. Puzio did not, for example, diagnose myofascial syndrome, which is "[i]rritation of the muscles and fasciae (membranes) of the back and neck causing chronic pain (without evidence of nerve or muscle disease)." *Atty's Dict. of Med.* at —338.

[3] The three pulmonary-function test results were performed in August 2006 (R. 244-248), November 2006 (R. 773), and December 2006 (R. 768-69).

(*Id*.) He concluded "[t]hat the lack of any remarkable objective findings is not indicative of a condition which presents limitations." (*Id*.) As the Commissioner now concedes, the first of these tests, administered in August 2006, actually is a test administered to another person, not Plaintiff. Plaintiff argues that the ALJ's finding is erroneous and must be reversed because he relied on improper evidence. She does not explain, however, how the elimination of the one test undercuts the ALJ's rationale when all three of the tests showed normal or very good lung function. The accuracy of the two remaining tests of Plaintiff's pulmonary function have not challenged. In addition, while the ALJ noted that two of the three normal-resulting tests occurred during a period of alleged exacerbation, all three tests actually occurred during the August to December 2006 period. Even accepting the ALJ's statement as given, there is still one normal-or-very-good test result during the period that supports the ALJ's finding that the objective medical evidence shows that Plaintiff's alleged condition was not severe. Plaintiff has not shown that the ALJ's reliance on the August 2006 pulmonary test results constitutes reversible error.

Plaintiff also argues that the ALJ erroneously failed to consider whether her pulmonary impairment was severe at step two and whether it medically equaled Listing 3.02C2 (chronic impairment of gas exchange due to clinically documented pulmonary disease) or Listing 3.03B (asthmatic attacks) at step three.

Plaintiff contends that the December 2006 test result, (R. 771), showing that her arterial blood gas values (ABGV) were only one away from meeting Listing 3.02C2, should have been discussed by the ALJ in relation to his step-two finding that her pulmonary impairment was not

9

severe. But the test was more than one value away from satisfying the listing: 3.02C2 requires at least two qualifying test results three or more weeks apart within a six-month period and Plaintiff's test was only one non-qualifying test result. Plaintiff has not pointed to medical evidence or opinion that a single test result at her values demonstrates that her impairment was severe in the step-two sense. An ALJ is not required to address every piece of evidence in his decision; it is sufficient if he traces the path of his reasoning and logically connects the evidence to his findings and conclusions. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir.2002); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir.2000); *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir.1993). The ALJ adequately traced the path of his reasoning on this issue and Plaintiff has not shown that it is not supported by substantial evidence. Plaintiff also suggests that the ALJ erred by not addressing her ABGV test results in the context of evaluating whether her pulmonary impairment medically equals Listing 3.02C2. (Plaintiff's Brief at 27). But, because the ALJ found that her pulmonary impairment was not severe, it would not be expected that he would address whether it medically equaled Listing 3.02C2.

Plaintiff also argues that the ALJ erred because he "did not consider the severity of [her] pulmonary condition in using section 3.03[B]." (Plaintiff's Brief at 27). Listing 3.03B is for asthma manifesting with attacks in spite of prescribed treatment and requiring physician interventions at least once every two months or at least six times over an evaluation period of at least twelve consecutive months. Plaintiff points to evidence showing that she saw her primary-care physicians for asthmatic attacks in May, August, September, October, and November of 2006 and that she was referred to a pulmonologist in December 2006. Plaintiff's argument appears to be either that the ALJ erroneously failed to consider whether Plaintiff met or

10

medically equaled Listing 3.03B for asthma at step three or that the ALJ failed to consider the criteria of Listing 3.03B in making his step-two determination of whether her pulmonary condition was severe. Because the ALJ did not find that Plaintiff's asthma, specifically, or her pulmonary impairment, generally, were severe under step two, it is not to be expected that he would consider whether Listing 3.03B was met or medically equaled at step three. In addition, Plaintiff does not present any authority requiring or suggesting that ALJs should make their step-two severity determinations according to the criteria of the Listings. In fact, the evidence that Plaintiff specifies does not satisfy Listing 3.03B's criteria (there are only five visits to physicians for asthma attacks, not six, and there is no evidence cited showing that these alleged attacks required physician intervention); thus, the influence that this evidence should have had on the ALJ's step-two determination is obscure. The ALJ stated that he considered whether Plaintiff's impairments, singly or in combination, met or medically equaled the Listing of Impairments and the state-agency physicians considered the issue and found that they did neither. This is sufficient for the purposes of step three.

Plaintiff has not shown that the ALJ erred in evaluating her pulmonary condition.

**Impairments in combination.** Plaintiff states that she complained of severe and intractable pain, that the ALJ was required to consider the combined effects of her "complaints of pain with the effects of her non-severe impairments," and that "[t]he ALJ's failure to consider the combined effects of all impairments requires a remand." (Plaintiff's Brief at 27-28). This is not an argument; it was not supported with any legal or factual development. As such, any argument attempted to be stated is forfeited.

## Conclusion

Plaintiff has not shown that the ALJ's decision is not supported by substantial evidence or is compromised by legal error. Therefore, the Commissioner's decision denying Plaintiff's application for disability benefits is AFFIRMED.

**SO ORDERED.**

Date: 09/28/2010

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Theodore F. Smith Jr
THEODORE F. SMITH JR. PC
tsmith@tedsmithlaw.com